### VILLARD et al. v. VILLARD et al.

(Supreme Court, Appellate Division, Second Department.　February 26, 1915.)

TRUSTS (§ 218\*)—MANAGEMENT OF ESTATE—LOSS ON INVESTMENT.

Testator directed his executors to set apart in cash or securities two amounts, to be held in trust to pay annuities, and provided that the trustee could retain in the trust fund any securities owned by testator at the time of his death without being liable on the ground that the securities were not legally permissible for trust investments, and provided in detail in what classes of securities the trustee might on its own account as trustee make investments of trust moneys.　The executors sold securities and invested the proceeds in other securities, which were set apart as the trust fund, and which the trustee received as such.　The trustee made no inquiry as to whether the securities had been owned by testator, and, had it done so, it could have made investments as directed in the will.　The executors did not suppress any information.　The trustee retained the securities as a part of the trust fund.　*Held*, that the trustee was liable for any loss occasioned by a decline in the value of the securities.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 310–313; Dec. Dig. § 218.\*]

Appeal from Special Term, Westchester County.

Action by Fanny Garrison Villard, individually, and others, against Fanny Garrison Villard, as executrix, and others, as executors, etc., of Henry Villard, deceased, and others.　From a judgment against

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defendant the Farmers' Loan & Trust Company, as trustee, it appeals. Affirmed.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

Charles F. Brown, of New York City (Frederick Geller and Edward H. Blanc, both of New York City, on the brief), for appellant.

William M. Wherry, Jr., of New York City, for respondents Villard and others.

William R. Begg, of New York City (Franklin W. M. Cutcheon and Charles E. Hughes, Jr., both of New York City, on the brief), for respondents executrix and executors of the will of Henry Villard, deceased.

Frederick E. Mygatt, of New York City, for respondents Bell and Von Xylander.

Raymond M. Lowes, guardian ad litem for infant respondents.

CARR, J. This action was brought in equity by the residuary legatees under the last will of Henry Villard, deceased, to procure an interpretation of some parts of the will, an accounting by the executors, and an accounting by the Farmers' Loan & Trust Company of its acts as trustee of two express trusts set apart to it for the payment of annuities of two life annuitants. Every person interested in the estate was made a party to the action. There were several infant defendants, represented by a guardian ad litem.

The controversy now before us on the appeal relates particularly to the settlement of the accounts of the trustee, appellant, under which a surcharge was made against it in a sum in the neighborhood of over $100,000 for alleged negligence on its part in caring for the amounts of the two trust funds. The trustee, the Farmers' Loan & Trust Company, is the sole appellant, and this trustee complains that there has been a practical coalition against it by all the other parties, to thrust upon it the burden of a loss for which it is not responsible legally or equitably. There are six briefs. The record appears voluminous, but the first 387 pages are devoted to the pleadings, findings, proposed findings, exceptions, etc., and there are but a little over 100 pages of actual testimony, exclusive of long documentary exhibits, which fill up the latter part of the case on appeal.

Henry Villard died possessed of a very large estate, mostly in "gilt-edged" securities. His will gave several general legacies, and provided that the executors should set apart in cash or in securities two separate amounts to be held in trust by the Farmers' Loan & Trust Company for the payment of specified annuities to two specified annuitants. The funds so set apart were to be sufficient in amount to pay the specified annuities on the separate trusts, which were provided for under separate clauses of the will (sixth and seventh). This will contained a very important clause, the twenty-fourth, which seems to have given rise to this particular controversy. The clause prescribes in substance that the trustee may retain in the trust fund any securi-ties *owned by the testator* at the time of his death, received by the trustee for the purposes of the trust, without being liable for the

fact that such securities were not legally permissible for trust investments; but it also provides in detail in what classes of securities the trustee may on its own account, as trustee, make investments of the trust moneys.

A claim was presented against the executors by a person claiming a large indebtedness to him by the decedent, in an amount of several hundred thousands of dollars, and the settlement of the estate was delayed pending the compromise of this claim. In the meantime the residuary legatees, in writing, requested the executors to sell some of the low interest-bearing securities and to reinvest the proceeds, at their discretion, in certain specified securities which yielded a larger profit, and among the securities so specified were the stock of the Metropolitan Street Railway Company and the Baltimore & Ohio Railroad Company. The executors complied with this request, and sold certain securities held by the decedent, and purchased 500 shares of the Metropolitan stock and 500 shares of the Baltimore & Ohio stock. It is as to these last two mentioned stocks that the present controversy relates. Thereafter the executors set apart these blocks of stock as parts of the trust funds for the annuitants; the Metropolitan stock going under the sixth clause of the will, and the Baltimore & Ohio stock under the seventh clause. The executors addressed to the trustee a written communication as to each trust fund, partly as follows:

"In compliance with the direction contained in article sixth of the last will and testament of Henry Villard, deceased, a copy of which we have furnished you, we herewith deliver [specification of securities] to be held by you as trustee for the purposes of the trust thus created," etc.

There was a similar writing as to the trust created under the seventh clause of the will. On the receipt of the securities and the communications aforesaid, the trustee gave receipts in writing, one for each trust, reciting the securities received, and declaring that the same were—

"to be held by this company as trustee under the sixth [or seventh] clause of the will of said Henry Villard."

This was in January, 1902. The trustee, instead of converting these securities into cash and reinvesting the proceeds in securities authorized for reinvestment under the twenty-fourth clause of the will, maintained in specie the Metropolitan and Baltimore & Ohio stock. In the course of years the value of the Metropolitan stock disappeared entirely, and that of the Baltimore & Ohio Railroad depreciated considerably. The annuitants failed to receive their annuities, and in this action the residuary legatees and the annuitants ask the trust company to make good the loss. The position of the trust company is that it was guilty of no negligence, that it had no actual knowledge that the securities turned over to it were not actually owned by Henry Villard at his death, that, although it made no inquiry on this matter and obtained no information until 1912, 10 years later, it was entitled to assume that the securities so coming to it were a part of Villard's estate when he died, and thus they were in the protection of the twenty-fourth clause of the will. As a final ground, the appellant trustee urges that the executors, by turning over, not cash, but securities

never owned by the testator, failed in fact to set apart or "constitute" the trust funds, and that as to the securities which actually came into its hands it never received nor held the same as a trustee, and therefore it has no liability to the annuitants and residuary legatees, and it asks that the executors should now be compelled to "constitute" the trust funds out of the residuary estate at the expense of the residuary legatees, against whom it claims an estoppel in its favor.

The position of the respondents is that, when the executors set apart the trust funds, they were not obliged to pay over actual cash or to deliver securities owned by the decedent; that the trustee should have inquired whether the securities tendered by the executors were owned by the decedent; that, having failed to make such inquiry, it actually accepted the tendered securities as just so much cash, at their then market value, and should have converted them into cash and invested the proceeds as provided in the twenty-fourth clause of the will. There is no evidence that the executors suppressed intentionally any information, and the trial court has so found. It is evident that in January, 1902, both the executors and the trustee considered the transaction of the setting apart of the two trust funds as entirely regular at that time. The securities at the time of their delivery had an ample cash market value, which could be realized immediately by either party. The loss to the residuary legatees and the annuitants arose, not from the delivery and receipt of these securities in January, 1902, but from what the trustee did or omitted to do in regard to them in the years following. After these securities got into the hands of the trustee, the duties of the executors as to these two trust funds were ended. When the trustee got and receipted for these securities, it could have inquired as to the origin of their possession by the executors, and, if it intended to treat or consider these securities as within the protective scope of the twenty-fourth clause of the will, then an inquiry would have been but a simple act of prudence, required by the measure of care owed by the trustee in the discharge of its duties. If such inquiry had been made and the facts elicited, as concededly they would have been, then, the facts being known, the executors could have turned these securities into cash and reinvested the proceeds as directed in the will. It was entitled to a reasonable time to do this, which the trial court fixed at six months. But the trustee was passive, probably from lack of prudent attention, and loss has followed, for which, as we think, it is clearly responsible. The amount at stake, the elaborate character of the main briefs, and the skill and eminence of counsel invest the case with an appearance of complication and difficulty, which disappears after consideration of the truly pivotal points of the controversy.

The judgment is affirmed, with costs. All concur, except BURR, J., not voting.